UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS,<br><br>   Plaintiff,<br><br>   v.<br><br>ROMERO, et al.,<br><br>   Defendants. | No. 2:17-cv-1884 TLN DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a former state prisoner proceeding pro se with a civil rights action under 42 U.S.C. §1983. Plaintiff alleges defendants violated his Eighth Amendment rights when a mechanical door was closed on him and when they failed to provide him medical care. Before the court is defendant Chuksorji's motion for summary judgment. Defendant argues she is entitled to summary judgment on the merits, she is entitled to qualified immunity, and plaintiff failed to exhaust his administrative remedies before filing this suit. For the reasons set forth below, this court will recommend defendant's motion be denied.

**BACKGROUND**

This case is proceeding on plaintiff's first amended complaint ("FAC"). (ECF No. 107.) Plaintiff alleges that Correctional Officers Romero and Zuniga worked in the control booth in Facility A, Building 1 of California State Prison-Solano ("CSP-Sol") on March 6, 2015. At about 3:30 p.m. that day, plaintiff and other inmates waited to enter Building 1. Defendant Romero was

1

1  in charge of opening the mechanical sliding door into the building.  He opened it only slightly.
2  Defendant Zuniga insisted the inmates squeeze through the door opening or he would write them
3  up for not being in their cells.  When plaintiff tried to squeeze through the door opening, Romero
4  closed the door on plaintiff and refused to release the door.  Other inmates then helped plaintiff
5  extricate himself from the door opening.  Plaintiff then asked Romero and Zuniga to call for
6  medical help but they refused.
7       Plaintiff further alleges that when he returned to his cell, he requested medical care from
8  Correctional Officer La, who refused to call for medical help.  Defendant La then directed
9  plaintiff to talk with Correctional Officer Abarca and another officer.  Plaintiff alleges defendant
10  Abarca did not call for medical help.  He also alleges that Abarca told him he had twice made a
11  call to the medical unit.  Abarca told plaintiff he had spoken to a nurse, whose name he could not
12  recall, who told Abarca that she was denying plaintiff's request for medical care because his
13  injuries were not life-threatening.  According to Abarca, the nurse told Abarca to tell plaintiff to
14  fill out a medical request form.  However, Abarca refused to give plaintiff one.
15       In the FAC, plaintiff claims he suffered pain and difficulty breathing.  He seeks punitive
16  and compensatory damages.
17       On screening, this court found plaintiff stated potentially cognizable Eighth Amendment
18  claims for excessive force against defendants Romero and Zuniga and denial of medical care
19  against all defendants.  (ECF No. 110.)
20       In December 2021, plaintiff moved to serve the FAC on a newly identified defendant.
21  (ECF No. 138.)  Plaintiff stated that, through discovery, he learned that the name of the defendant
22  previously identified as Jane Doe is G. Chuksorji.  Plaintiff alleges Chuksorji is the nurse Abarca
23  contacted who denied plaintiff's request for medical care.  Defendants did not oppose the motion
24  to serve the FAC on defendant Chuksorji and the court granted it.  (ECF Nos. 151, 154.)
25       On November 18, 2022, defendant Chuksorji filed the present motion for summary
26  judgment.  (ECF No. 181.)  Plaintiff filed an opposition (ECF No. 190) and defendant filed a
27  reply (ECF No. 191).  Plaintiff then filed an "Opposition to defendants reply brief," a document
28  sometimes referred to as a "sur-reply."  (ECF No. 192.)  The Local Rules do not authorize the

1 routine filing of a sur-reply. See E.D. Cal. R. 230(l). Nevertheless, when a party has raised new arguments or presented new evidence in a reply to an opposition, the court may permit the other party to counter the new arguments or evidence. El Pollo Loco v. Hashim, 316 F.3d 1032, 1040-41 (9th Cir. 2003). Here, defendant's reply addressed the arguments in plaintiff's opposition and raised no new theories. Accordingly, this court will not consider plaintiff's sur-reply.

**MOTION FOR SUMMARY JUDGMENT**

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing
2 party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
3 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
4 existence of this factual dispute, the opposing party typically may not rely upon the allegations or
5 denials of its pleadings but is required to tender evidence of specific facts in the form of
6 affidavits, and/or admissible discovery material, in support of its contention that the dispute
7 exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  However, a complaint that
8 is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified
9 complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise
10 from personal knowledge and contain specific facts admissible into evidence.  See Jones v.
11 Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.
12 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff
13 "demonstrated his personal knowledge by citing two specific instances where correctional staff
14 members . . . made statements from which a jury could reasonably infer a retaliatory motive");
15 McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d
16 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because
17 it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury
18 pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would
19 an affidavit for the purposes of summary judgment.").  The opposing party must demonstrate that
20 the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
21 governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury
22 could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.
23 242, 248 (1986).
24    To show the existence of a factual dispute, the opposing party need not establish a
25 material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be
26 shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."
27 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).
28 Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II. Analysis**

Defendant makes three arguments. First, she argues that plaintiff testified at his deposition that Abarca did not call for medical help. Therefore, plaintiff cannot establish that Chuksorji was aware of plaintiff's medical needs and plaintiff cannot succeed on his Eighth Amendment claim against her. Second, defendant argues that she is entitled to qualified immunity. Third, defendant argues that plaintiff failed to exhaust his administrative remedies with respect to his claim against her. Each argument is addressed below.

**A. Eighth Amendment Medical Claim**

Defendant argues that plaintiff's deposition testimony that Abarca did not call for medical help defeats an essential element of plaintiff's Eighth Amendment claim – that she knew of plaintiff's medical need.

**1. Legal Standards**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

5

Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 2. Discussion of Eighth Amendment Claim

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 181-2.) Plaintiff's filing in opposition to defendant's motion for summary judgment fails to comply with Local Rule 260(b). (ECF No. 190.) Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the

Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff's opposition to the summary judgment motion consists of a brief.

In light of plaintiff's pro se status, this court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in the DSUF or has shown facts that are not opposed by defendant. The court also considers the statements plaintiff made in his verified complaint and FAC and of which he has personal knowledge.

With respect to plaintiff's Eighth Amendment claim, the DSUF lists only one "undisputed" fact: "At his deposition, Williams testified that Officer Abarca never notified Chuksorji of Williams's alleged need for medical treatment." (ECF No. 181-2, DSUF No. 11.) Plaintiff disputes that statement. Defendant contends that Williams may not rely on other declarations or statements contrary to his deposition testimony because "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." (ECF No. 181 at 14 (quoting Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012).) This rule is known as the "sham affidavit rule."

> [It] prevents "a party who has been examined at length on deposition" from "rais [ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy*, 952 F.2d at 266 (internal quotation marks omitted); *see also Van Asdale*, 577 F.3d at 998 (stating that some form of the sham affidavit rule is necessary to maintain the principle that summary judgment is an integral part of the federal rules). But the sham affidavit rule " 'should be applied with caution' " because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. *Id.* (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir.1993)), In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998–99.

Yeager, 693 F.3d at 1080.

////

For two reasons, this court finds the sham affidavit rule inapplicable. First, the rule focuses on inconsistency between deposition testimony and a "subsequent" affidavit. <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998-99 (9th Cir. 2009). Plaintiff's deposition was taken on July 9, 2019.[1] Plaintiff did not provide a subsequent affidavit. Rather, plaintiff's statements that Abarca contacted medical personnel were first made in his verified complaint, filed July 9, 2017. Plaintiff described Abarca's "allegations" that he had twice spoken to

> a woman named Chuch a T.T.A. RN that we will call "Jane Doe," officer Abarca said he did'nt [sic] remember her name at first after alleged first call and he said, "she told him she is denying my medical request because it was not life threatening and medical care is only provided when it's life threatening (See: exhibit C ) and for me to fill out a 7362 medical request that officer Abarca did not give me.

(ECF No. 1 at 8.) This court recognizes that immediately before these statements in the complaint, plaintiff makes a statement that could be construed as contradictory. He appears to indicate that Abarca claimed, apparently in a response to plaintiff's grievance, that he was at the scene of the incident and stated that plaintiff had not been trapped by the door. Plaintiff notes there that Abarca refused to call for medical help.

Plaintiff's statements in his complaint can be construed to be allegations, perhaps in the alternative, that Abarca called the medical unit, spoke to defendant Chuksorji, and Chuksorji refused to approve medical care at that time. The fact that plaintiff's allegations may, at times, appear contradictory, should be construed, at this juncture, in his favor. <u>See</u> <u>Walls v. Central Contra Costa Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011). The court does not, on summary judgment, make credibility determinations. <u>See</u> <u>Van Asdale</u>, 577 F.3d at 998. And, because plaintiff's complaint was filed before his deposition, it cannot be said that plaintiff's allegations therein were an attempt to contradict his deposition testimony in order to create an issue of fact. <u>See</u> <u>Ortiz v. Alvarez</u>, 341 F. Supp. 3d 1087, 1102 (E.D. Cal. 2018) (purpose of sham affidavit rule is to prevent a party from "create[ing] an issue of fact by an affidavit contradicting his prior deposition testimony").

---

[1] Defendants lodged a paper copy of the transcript of plaintiff's deposition. (<u>See</u> ECF No. 77.)

9

This court finds the sham affidavit rule inapplicable for a second reason. Defendant's "undisputed fact" is misleading. Plaintiff did not only testify that Abarca did not call for medical help. Plaintiff also testified that he didn't "think" Abarca had done so but recalled Abarca telling him that he had called the medical unit and been told they would not see plaintiff at that time. Plaintiff testified:

> Q   Did you speak to Abarca?
>
> A   Yes.
>
> Q   What exactly did you say to Officer Abarca?
>
> A   I told him what happened.
>
> Q   Did you say anything else?
>
> A   That I need medical care, call medical.
>
> Q   And what did Officer Abarca say?
>
> A   Some bullshit. Didn't do it. I don't remember exactly what he said, but then eventually he claimed to have called medical.

(Pl's Depo Trscrpt ("Depo.") at 80-81.) Plaintiff then stated that he twice asked Abarca to call for medical care and didn't recall exactly what Abarca said. After reviewing his complaint, plaintiff testified,

> A   Well, during our conversation, he said he called medical twice. Well, that's what he told me.
>
> Q   Just so I'm clear. Did you say Officer Abarca called medical twice?
>
> A   He claimed to call medical twice.
>
> Q   Is it your belief that he did not call medical?
>
> A   I don't think he did anything. I didn't see him do it.
>
> Q   Is there any other basis for your belief that he did not call medical?
>
> A   If he called medical, he would have pressed his alarm, and the alarm would have went off and medical would have come.
>
> Q   Is there any other way for officers to call medical other than pressing their alarm?

10

| | | |
|---|---|---|
| A | | Not if I'm saying it's an emergency. |
| Q | | So my question was: Is there any other way that officers can call for medical other than pressing their alarm? |

(Depo. at 81-82.)  Plaintiff responded that he did not know.  When asked if there were any other reasons why plaintiff thought Abarca did not call medical, plaintiff stated "Because I never got medical attention." and "Because he probably didn't call."  (Depo. at 82-83.)

Plaintiff was then asked about the contention in his complaint that Abarca told him he had spoken to medical staff:

| | | |
|---|---|---|
| Q | | Did Officer Abarca say anything else to you that day? |
| A | | Not that I recall. |
| Q | | He didn't talk to you about any medical staff? |
| A | | Oh, yeah.  He claimed to talk to somebody from medical. |
| Q | | Who did Officer Abarca say that he spoke to in medical? |
| A | | Somebody, a name that he couldn't remember. |

(Depo. at 83.)

Plaintiff's testimony does not demonstrate a clear allegation that Abarca did not call for medical help.  Construing plaintiff's allegations liberally, and recognizing that plaintiff may need to allege alternatives – that Abarca did and did not call medical – because he does not know for certain, this court finds plaintiff's deposition testimony should not be read to establish that Abarca did not call for medical help as an undisputed fact.

Defendant Chuksorji does not argue any other aspects of the merits of plaintiff's Eighth Amendment claim against her.  Because this court finds disputes of material fact about what, if anything, Chuksorji knew about plaintiff's condition on March 6, 2015, summary judgment should be denied on the merits of plaintiff's Eighth Amendment claim against Chuksorji.

**B.  Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910

11

(9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence).

Defendant Chuksorji's argument that she is entitled to qualified immunity is based solely on her assertion that plaintiff cannot prove she knew about his serious medical need. For the reasons stated above, whether or not Chuksorji knew about plaintiff's medical needs is disputed. Taking the facts in the light most favorable to plaintiff, he may be able to show Chuksorji violated his Eighth Amendment rights. On summary judgment, defendant is not entitled to a determination that she is protected by qualified immunity.

### C. Exhaustion of Administrative Remedies

Defendant argues that plaintiff failed to identify her in his grievances filed after the March 6, 2015 incident. Therefore, plaintiff failed to exhaust his administrative remedies against her as required by the Prison Litigation Reform Act ("PLRA").

#### 1. Legal Standards

##### a. PLRA Exhaustion Requirement

The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007)

1 (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir.
2 2009) ("The California prison system's requirements 'define the boundaries of proper
3 exhaustion.'" (quoting Jones, 549 U.S. at 218)).

4 Although "the PLRA's exhaustion requirement applies to all inmate suits about prison
5 life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA
6 is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly
7 stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative
8 remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42
9 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for
10 improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies
11 that rational inmates cannot be expected to use are not capable of accomplishing their purposes
12 and so are not available."). "We have recognized that the PLRA therefore does not require
13 exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp,
14 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935
15 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy
16 remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,'
17 and the prisoner need not further pursue the grievance.").

18 Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies
19 must generally be brought and decided pursuant to a motion for summary judgment under Rule
20 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an
21 affirmative defense" and defendants have the burden of "prov[ing] that there was an available
22 administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-
23 72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d
24 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not
25 allow for all types of relief sought are still "available" as long as the procedures may afford
26 "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial
27 burden, a plaintiff then must "come forward with evidence showing that there is something in his
28 particular case that made the existing and generally available administrative remedies effectively

unavailable to him." Albino, 747 F.3d at 1172.  Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]he ultimate burden of proof," however, never leaves the defendant.  Id.

### 2. California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  At the time plaintiff filed his appeals,[2] inmates in California proceeded through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDCR 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  In specific circumstances, the first level review may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  However, a cancellation or rejection decision does not exhaust administrative remedies.  Id. § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  "If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id.  Further, the inmate must "state all facts known and

---

[2] In 2020, California changed the grievance system from a three-tier system to a two-tier system. That change was effective in June 2020, after plaintiff initiated the relevant appeals in the present case.  See Cal. Code Regs. tit. 15, § 3480.  All citations to the California code in the text refer to the prior law.  It can be found here:  https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2020/04/Master-File-Appeals-Emerg-Regs_ADA.pdf

available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested." Id. § 3084.2(a)(4).  The appeal should not involve multiple issues that do not derive from a single event. Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

**B. Undisputed Material Facts re Exhaustion**

- Exhibits A-F to defendant's Request for Admissions are correct copies of 602 Inmate Appeals submitted by plaintiff.  (Pl's Resp. to Req. for Admissions Nos. 1, 5, 9, 13, 17, 21 (ECF No. 181-1 at 61-84).)

- Exhibit A to the Request for Admissions is a copy of plaintiff's appeal CSP-S-15-00687.  (ECF No. 181-1 at 27-32.)

- In appeal CSP-S-15-00687, plaintiff states: "On 3-16-15 I was injured when officer Zueniga [sic] closed front-door of Building 1 on my chest cavity after he refused to open the door completely.  I am requesting herein that he be formally reprimanded, not verbally warned, and that I be seen by a doctor immediately to obtain adequate medical care for my injury."  (Id.)

- Plaintiff attached a "Supporting Document" to CSP-S-15-00687.  It is an Inmate/Parolee Request for Interview, Item or Service, CDCR form 22, submitted by plaintiff on March 7, 2015.[3]  In the first section of the request, plaintiff states that he was "squished" in the door by Officer Zuniga.  He further states that he was refused medical care by Officer Abarca.  (Id.)

- In the CDCR form 22 originally submitted by plaintiff on March 7, 2015, he states in "Section C: Request for Supervisor Review," in relevant part, that "C.O. Abarra [sic] claims I got smashed-in-door in different manner and not 'like he said' as

---

[3] On his appeal form, plaintiff identifies the CDCR 22 as being filed on March 9, 2015.  However, the copy attached to his appeal shows that he originally submitted it on March 7, 2015 and, after he received a staff response to his request, he submitted the Request for Supervisor Review on March 9, 2015.

15

1   stated above.  However, Abarra did, in fact, call for medical for me after I got
2   caught in front-door and my request was denied." (Id.)

3  - Exhibit B to the Request for Admissions is a copy of plaintiff's appeal CSP-S-15-
4    00827. (ECF No. 181-1 at 33-37.)

5  - Plaintiff's statements in appeal CSP-S-15-00827 are, in all relevant respects,
6    identical to plaintiff's statements in appeal CSP-S-15-00687, including the
7    attachment of a copy of the CDCR form 22 submitted on March 7, 2015. (Id.)

8  - Exhibit C to the Request for Admissions is a copy of plaintiff's appeal CSP-S-15-
9    02618. (ECF No. 181-1 at 38-42.)

10 - In plaintiff's appeal CSP-S-15-02618, he states that on November 1, 2015 he
11   discovered that it was Officer Romero, not Officer Zuniga, who "purposely"
12   closed the door on plaintiff on March 6, 2015.  He further states that "C.O. Abarca
13   and Tom A. La also refused to get me medical care for my injuries.  C.O. Abarca's
14   actions are outlined in the form 22 attached to this 602."

15 - In appeal CSP-S-15-02618, plaintiff states that he has attached a "copy of previous
16   602" and a "copy of form 22 filed 3-9-15."  In the body of his statement, he
17   describes the previous 602 as CSP-S-15-00827.  Neither attachment is included in
18   the copy of appeal CSP-S-15-02618 filed in this court. (See id..)

19 - Exhibit D to the Request for Admissions is a copy of plaintiff's appeal CSP-S-16-
20   00254. (ECF No. 181-1 at 43-47.)

21 - In appeal CSP-S-16-00254, plaintiff states that he is appealing the cancelation of
22   CSP-S-15-02618.  He describes difficulties he has had submitting appeals. (Id.)

23 - Exhibit E to the Request for Admissions is a copy of plaintiff's appeal CMF-M-
24   17-00446/15-00827. (ECF No. 181-1 at 48-53.)

25 - Plaintiff's appeal CMF-M-17-00446/15-00827 appears to be a photocopy of
26   appeal CSP-S-15-00827. (Compare ECF No. 181-1 at 34-37 with ECF No. 181-1
27   at 49-51, 53.)  There appear to be three relevant differences between Exhibit E and
28   appeal CSP-S-15-00827.  First, on the photocopy of CSP-S-15-00827, plaintiff

16

crossed out Zuniga's name and added Romero's. Second, at the end of his statement, he added in handwriting: "I also request Officer Abarca and La be reprimanded for denying me medical after I was injured by Officer Romero." Third, the copy of appeal CMF-M-17-00446/15-00827 filed with the court does not include a copy of a CDCR form 22. (ECF No. 181-1 at 48-53.)

- Exhibit F to the Request for Admissions is a copy of plaintiff's appeal CMF-M-17-00793/CSP-S-17-00804. (ECF No. 181-1 at 54-58.)
- In appeal CMF-M-17-00793/CSP-S-17-00804, plaintiff states that he is appealing the cancelation of CSP-S-15-00827 and CMF-M-17-00446. Therein, plaintiff describes difficulties he has had submitting appeals. (Id.)
- Plaintiff alleges he has exhausted his remedies against Chuksorji in the six appeals referenced above. (ECF No. 181-1 at 84 (Pl's Resp. to Interrogatory No. 7).)
- Plaintiff does not identify any other appeals in which he claims to have exhausted remedies against Chuksorji. (ECF No. 181-2, DSUF No. 10.)

**C. Discussion**

Defendant argues that none of plaintiff's appeals mention her by name or description. Defendant quotes from the body of plaintiff's appeals in which plaintiff states that Abarca denied or refused him medical care. Defendant does not discuss the fact that the form 22 plaintiff attached to at least two of his appeals states that Abarca "did, in fact, call for medical for me after I got caught in front-door and my request was denied." Whether or not that statement on the form 22 was sufficient to exhaust plaintiff's administrative remedies against Chuksorji is a close question.

As a general rule, a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner should provide the level of detail required by the prison's regulations. See Sapp, 623 F.3d at 824 (citing Bock, 549 U.S. at 218). California regulations required plaintiff to "list all staff members involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). However, if the inmate does not "have the requested identifying information about the

17

staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.

While plaintiff did not identify Chuksorji by name, he did provide information from which the prison could identify her. Plaintiff explained that Abarca had called medical and was told plaintiff's request was denied. A question to Abarca and/or prison records would have assisted in identifying the person he spoke to. It's important to note that the purpose of a prison grievance is not preparation for litigation. Rather, "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)). Further, "[e]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones, 549 U.S. at 219. "The PLRA requires exhaustion of 'such administrative remedies as are available," 42 U.S.C. § 1997e(a), but nothing in the statute imposes a 'name all defendants' requirement." Id. at 217. Rather, the court in Griffin held that, where a prison's grievance procedures are silent, a prisoner's allegations will suffice if they generally notify the prison of a problem with sufficient detail to permit the prison to remedy it. Griffin, 557 F.3d at 1120-21.

This court recognizes that, as described above, the California regulations governing prison grievances were not silent about the need to attempt to identify prison personnel involved in the prisoner's complaint. The regulations required a prisoner to provide a name or to provide any available identifying information. However, CDCR form 602 does not state that identification of all staff members involved is required. The instructions simply tell a prisoner to "Explain your issue," describe the "Action requested," and attach any supporting documents. (See e.g., Appeal CSP-S-15-00687 (ECF No. 181-1 at 28).) The instructions do tell the prisoner to "Refer to CCR 3084 for further guidance with the appeal process." However, a reasonable prisoner would not necessarily feel he needed additional guidance and could simply explain his issue as instructed.

////

////

One judge in this district has held that the absence of an instruction on form 602 requiring a prisoner to list all staff members involved in the incident made the requirement "essentially unknowable:"

> Requiring a list of all involved staff members, along with a description of their involvement in the issue, without informing inmates of such requirement also renders the remedy unavailable since "essentially 'unknowable' — so that no ordinary prisoner can make sense of what it demands...." *Ross*, 136 S. Ct. 1850, 1859-60. Defendants fail to show that § 3084.2(a)(3) was generally publicized to inmates for Plaintiff to have known that he needed to list Sgt. Stonestreet in IA #13-01703 to exhaust his administrative remedies on his deliberate indifference claim against him. *Williams*, 775 F.3d at 1191.

Leos v. Rasey, No. 1:14-cv-02029 LJO JLT PC, 2016 WL 4041180, at *5 (E.D. Cal. July 27, 2016), rep. and reco. adopted, 2016 WL 4943973 (E.D. Cal. Sept. 16, 2016). The court in Leos concluded that the defendants' motion for summary judgment on the basis of failure to exhaust should be denied. Id. at *7.

This court must make "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls, 653 F.3d at 966. Therefore, this court finds plaintiff's references to Abarca's phone calls for medical help and statement that Abarca had "in fact" made those calls to be sufficient to have placed the prison on notice that someone in the medical unit may be involved in plaintiff's claimed failures to provide medical care. Defendant has not demonstrated that it is an indisputable fact that plaintiff failed to exhaust his remedies against Chuksorji. This court will recommend defendant Chuksorji's motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies against plaintiff be denied.

**III. Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant Chuksorji's November 18, 2022 (ECF No. 181) motion for summary judgment be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 13, 2023

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB Prisoner Inbox/Civil Rights/ S/will1884.chuk msj fr